IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| PROASSURANCE SPECIALTY INSURANCE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> GENERATIONS ADULT DAY SERVICES, INC., TIFFANI BROWN, LINDA BATTLE, and SUSAN MORAN AS ADMINISTRATOR OF THE ESTATE OF BRENDA NEWMAN, DECEASED, <br><br> Defendants. | Civil Action No: _____ |

**COMPLAINT FOR RESCISSION OF INSURANCE CONTRACT
AND FOR DECLARATORY JUDGMENT**

COMES NOW, ProAssurance Specialty Insurance Company, Inc., ("ProAssurance") and files this Complaint, showing the Court as follows:

**PARTIES**

1.

The Plaintiff, ProAssurance, is an Alabama Corporation, with its principal place of business at 100 Brookwood Place, Birmingham, AL 35209.

2.

Defendant Generations Adult Day Services, Inc. ("Generations") is a Georgia Nonprofit Corporation, with its principal place of business at 275 Northside Crossing, Macon, GA 31210. It may be served with process through its registered agent Kimberly Grimsley, 135 Senora Pl., Macon GA 31210. Thus, Generations is subject to the jurisdiction and venue of this Court.

3.

Defendant Tiffani Brown ("Brown") is a citizen of the State of Georgia. Defendant Brown

resides at 210 Lagrange Ct, Macon, GA 31210, where she may be served with process. Thus, Ms. Brown is subject to the jurisdiction and venue of this Court.

4.

Defendant Linda Battle ("Battle") is a citizen of the State of Georgia. Defendant Battle resides at 193 Hidden Lakes Drive, Gray, GA 31032, where she may be served with process. Thus, Ms. Battle is subject to the jurisdiction and venue of this Court.

5.

Defendant Susan Moran ("Moran") is the administrator of the Estate of Brenda Newman ("Newman") and is a citizen of the State of Georgia. Defendant Moran resides at 257 Jesse Scott Road SE, Milledgeville GA, where she may be served with process. Thus, Ms. Moran is subject to the jurisdiction and venue of this Court.

6.

Defendant Moran has been named as a Defendant in this declaratory judgment action as she is a third-party claimant against Generations, Brown, and Battle, in the lawsuit, Susan Moran, as administrator of the estate of Brenda Newman v. Generations Adult Day Services Inc., Linda Battle, and Tiffani Brown, No. 21-SCCV-092396, State Court of Macon-Bibb County GA (the "Newman Lawsuit"). Although Georgia law provides that Defendant Moran is bound by a judgment entered against Generations, Brown, and Battle, regardless of whether or not she is a defendant in the case, Plaintiff has added Moran as a Defendant in this suit as it is permitted to do. Old Republic v. Hartford, 944 F. Supp. 2d 1327 (2013).

## JURISDICTION AND VENUE

7.

ProAssurance is an Alabama corporation and has its principal place of business in the State

of Alabama. Defendants are all citizens of the State of Georgia. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332. Thus, this Court has jurisdiction in this matter pursuant to 28 U.S.C. §1332.

8.

This action seeks a declaratory judgment pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, equitable relief, rescission under Georgia law (O.C.G.A. § 33-24-7), and other relief under Georgia law.

9.

Venue is proper in this Court as at least one Defendant resides in this district, and substantially all of the matters addressed herein occurred in this district. 28 U.S.C. §1391(b)(1)&(2).

**FACTS**

A. **The Undisclosed Operations of Generations.**

10.

Generations provides services to adults and children with serious disabilities.

11.

For part of its business, Generations operates "day programs." For "Day Programs," Generations provides care to the adults and children at a facility for limited hours during the day. There is no residential component to a Day Program. The adults and children leave the facility each day to return to their private residence (the "Day Programs").

12.

Another part of Generations' business is "residential services." For these "Residential Services," Generations operates group care homes for adults in which these adults physically

reside at the facility. The adults do not leave the facility each day to return to a private residence (the "Residential Services").

13.

Since at least July 1, 2018, Generations has provided Residential Services at 119 Orange Street, Haddock, GA 31033 (the "Haddock Location").

14.

As detailed below, when filling out its Application for insurance with ProAssurance (the "Application"), Generations did not disclose to ProAssurance that it provided the Residential Services and, further, did not disclose its work at the Haddock Location. These were material misstatements on the Application.

B. **The Haddock Location.**

15.

On July 1, 2018, Generations entered into a contract with Ms. Battle concerning services for Ms. Newman at the Haddock Location. [**Ex. 1**, Professional Service Agreement between Ms. Battle and Generations (hereinafter, the "Battle Agreement")].

16.

In the Battle Agreement, Ms. Battle and Generations agreed, in part, that Ms. Battle would provide certain services to Ms. Newman at the Haddock Location. In exchange for this service, Generations agreed, in part, to reimburse Ms. Battle at a rate of $110 per day.

17.

The Battle Agreement expressly states that Ms. Battle is not an employee of Generations. As the Battle Agreement reads in pertinent part, "Contractor is not an employee of the provider; therefore, Contractor is exempt from for (sic) all federal, state, and local taxes. Contractor will not

receive a 1099 for tax purposes. Contractor exemption applies under foster-host care exclusion." [Battle Agreement, Sec. II. Para. C.].

C. **The Newman Lawsuit and the Facts Underlying the Same.**

18.

On January 22, 2021, Ms. Moran as administrator of the Estate of Ms. Newman filed suit in the State Court of Bibb County, GA against Generations, Battle, and Brown. [**Ex. 2**, Complaint in Newman Lawsuit].

19.

The Newman Lawsuit alleges that Ms. Newman was a "resident" at the Haddock Location which was operated by Generations, Battle, and Brown. [Compl. in Newman Lawsuit, para. 3-5].

20.

The Newman Lawsuit alleges that Ms. Newman died while a "resident" at the Haddock Location due to the alleged acts and omissions of Generations, Battle, and Brown. [Compl. in Newman Lawsuit, para. 25, para. 30, para. 33]. The Newman Lawsuit alleges the following counts: Count 1 (Negligence as to Generations); Count 2 (Negligence as to Ms. Brown); Count 3 (Negligence as to Ms. Battle); Count 4 (Damages for wrongful death and pain and suffering).

D. **The Insurance Application.**

21.

Generations purchased a Social Services Entity Liability Policy with ProAssurance, Policy No. SFC9637218, Policy Period of 11/10/18 to 11/10/19 (the "Policy"). [**Ex. 3**, Policy].

22.

The Policy followed other claims made and reported policies that ProAssurance had issued to Generations in prior years. At the expiration of each policy period, Generations was required to

submit a new application to renew coverage with ProAssurance.

23.

On or about November 9, 2018, Generations submitted a Renewal Application with ProAssurance for the Policy (the "Application" or "Renewal Application"). [**Ex. 4**, Renewal Application]. The Renewal Application is executed by an officer of Generations.

24.

The Application contains a number of representations that are required of all applicants seeking renewal of this insurance with ProAssurance. These representations are used by ProAssurance's underwriting department to make a decision as to whether or not to accept the applicant as an insured for a renewal policy.

25.

A portion of the Application is entitled "Professional Liability Application With No Residential Exposure." [Professional Liability Application With No Residential Exposure, p. 1]. This was executed by Kimberly McCoy-Hollis, the Executive Director, for Generations.

26.

Section 1.3 of this portion of the Application requests information for "Location Address(es)." The only addresses provided were as follows: "2800 Northside Crossing Macon GA 31210 (Admin Office); 2278 Ingleside Dr, Macon, GA 31204, 285 Rogers Ave Macon, GA 31204." Id. There is no disclosure of the Haddock Location.

27.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

28.

This same portion of the Application states, in part, as follows: "do you have any other premises or operations not stated in this application?" Generations checked "No." Id. at Sec. 2.15.

29.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

30.

Another question in this Application requests Generations to describe its operations: "Describe the nature of insured's operation including types of services rendered and activities conducted." Id. at Sec. 1.14. Generations stated "ADULT **DAYCARE** FOSTER CARE PLACEMENT AND HOME HEALTHCARE (HOMEMAKER AIDES)." Id. (emphasis supplied). There is no mention of Residential Services for adults.

31.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

32.

Another portion of the Application is entitled "Professional Liability Renewal Application for Allied Health or Social Services." [Ex. 3, p. 6]. This portion of the Application was executed by Kimberly McCoy-Hollis, the Executive Director, for Generations.

33.

Part II of this portion of the Application requested that Generations identify certain exposures. As it stated, "**Exposures (if a line below does not apply mark "NA")**. Id. (emphasis in original). One of the potential exposures was "occupied beds, residents." Generations stated "NA" for this exposure. Id.

34.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

35.

The Application also contains multiple attestation clauses that the Application is true and correct. The first attestation clause is in the Request to Bind.

> The applicant reaffirms and warrants that they have reviewed the application submitted to ProAssurance MidContinent Underwriters, Inc. and that all information contained in the application is true and correct and recognizes his or her responsibility to provide full and accurate information as requested in the application and to update all such information as appropriate.

[Request to Bind, p. 4]. This was signed by Ms. McCoy-Hollis on behalf of Generations on November 9, 2018.

36.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

37.

A second attestation states as follows:

> I understand and agree this Application and any and all supplements attached hereto may be made a part of any policy issued, and any such policy will be issued in reliance upon the representation made herein. I further understand and agree that failure to provide a true and accurate response to the foregoing questions may, at the option of the Company, result in the voiding of insurance issued in reliance on this Application and/or denial of claims under any policy issued.

[Professional Liability Application for Social Services with No Residential Exposure, p. 5]. This was signed by Ms. McCoy-Hollis on behalf of Generations on November 9, 2018.

38.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

39.

A third attestation states as follows:

> I understand and agree this Application and any and all supplements attached hereto may be made a part of any policy issued, and any such policy issued will be issued in reliance upon the representations made herein. I further understand and agree that failure to provide a true and accurate response to the foregoing questions may, at the option of the Company, result in the voiding of insurance issued in reliance on this Application and/or denial of claims under any policy issued.

[Professional Liability Renewal Application for Allied Health or Social Services, p. 2]. This was signed by Ms. McCoy-Hollis on behalf of Generations on November 9, 2018.

40.

This statement is false since, at the time, Generations had been operating at the Haddock Location and providing Residential Services, since at least July 1, 2018.

41.

Upon information and belief, the aforementioned representations are also false because Generations had other undisclosed premises, in addition to the Haddock Location. Upon information and belief, the aforementioned representations are also false because Generations had been performing Residential Services for many years prior to the Application. The locations and activities of Generations constitute important exposures for which ProAssurance unknowingly accepted coverage.

42.

Ms. McCoy-Hollis knew that Generations had other locations, including the Haddock Location, and provided Residential Services. However, Ms. McCoy-Hollis concealed these facts

on the Application. Ms. McCoy-Hollis, and by operation of law the Defendants, had knowledge at the time of filing the Application and should have disclosed the information but did not disclose it. Accordingly, the Defendants' representations on the application were fraudulent, false, and material.

43.

ProAssurance issued the Policy in reliance upon these statements.

44.

The misrepresentations and/or false statements on the Application were material to the acceptance of the risk and to the hazard assumed by ProAssurance.

45.

The omitted facts are facts that constitute additional exposures that could have led (and ultimately did lead) to a claim against Generations. Accordingly, the misrepresentations and/or false statements on the Application were material to the acceptance of the risk and to the hazard assumed by ProAssurance.

46.

If ProAssurance had been aware of the facts surrounding Generations' additional locations and provision of Residential Services as required by the Policy, Application, and Georgia law, in good faith, ProAssurance would <u>not</u> have issued the Policy.

47.

If ProAssurance had been aware of the facts surrounding Generations' additional locations and provision of Residential Services as required by the Policy, Application, and Georgia law, in good faith, ProAssurance would <u>not</u> have issued the Policy at the premium rate applied for and/or would not have provided coverage.

48.

The Policy further makes clear that ProAssurance relied on Generations' representations when issuing the Policy, as it states:

> By acceptance of this **policy**, all **insureds** agree that the statements in the **Coverage Summary** and in their respective applications or renewal applications for insurance, and in any other material submitted to **us** in order to secure insurance coverage, are their agreements and representations, that this **policy** is issued in reliance upon the truth of such representations, and that this **policy** embodies all agreements existing between themselves and **us** or any of **our** agents relating to this insurance. In the event of any fraud, material misrepresentation or omission by any **insured** in any application or renewal application for insurance, or other material submitted to **us** to obtain insurance, this **policy** is void as to the party committing such fraud, material misrepresentation or omission, no coverage is afforded to such party hereby, and such party shall have no right to purchase a **Reporting Endorsement**.

[Policy, General Conditions XI, Ex. 3].

49.

The Cover Page of the Policy likewise makes clear that ProAssurance relied on Generations' representations when issuing the Policy, as it states: "In consideration of the payment of the premium, and in reliance upon the statements and representations in the applications for insurance and the **Coverage Summary**, **we** agree to provide the insurance contained in the **policy**." [Policy, Social Services Entity Liability Policy Cover Page, p. 1].

50.

Based on the false information contained in the application, ProAssurance approved the renewal of coverage and issued the Policy. Therefore, according to Georgia law, ProAssurance is entitled to rescind the Policy.

51.

ProAssurance has tendered the amount of EIGHT THOUSAND EIGHT HUNDRED AND FIFTY EIGHT DOLLARS ($8,858.00) to Generations as a refund for the premium paid for the

Policy. ProAssurance requests permission to interplead these funds if the tender is rejected.

52.

Pursuant to O.C.G.A. § 33-24-7, Generations' material misrepresentations on its application for the Policy entitle ProAssurance as a matter of law to rescind the Policy.

**E. The Policy.**

53.

Subject to its terms, conditions, exclusions, and Georgia law, the Policy provides coverage under two Policy parts. Part one is a General Liability Coverage ("**GLC** Part"). Part two is a Professional Liability Coverage ("**PLC** Part").

54.

There are a number of terms of the Policy that make clear that the Newman Lawsuit is <u>not</u> a covered claim, in whole or in part, under the **GLC** Part, **PLC** Part, or otherwise.

i. <u>Defenses applicable to the Policy as a whole.</u>

55.

The Policy contains a number of "General Conditions" which are applicable to the Policy as a whole. Condition V (Other Insurance) states: "The insurance provided by this **policy** is excess over any **other insurance** and will not contribute or participate in any defense or indemnity until all **other insurance** has been exhausted." [Policy, General Conditions, Condition V.]. The term "**other insurance**" is defined by the Policy as "any valid and collectible insurance, self insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this **policy**, that provides defense or indemnity to any **insured** for any claim, loss, liability, or **damages** covered by this **policy**." [Policy, Definitions, p. 3]. The Battle Agreement requires Ms. Battle to maintain insurance for a claim related to Ms. Newman. [Battle Agremeent, Sec. II]. To the extent

that Ms. Battle obtained such insurance, the most that the Policy would provide is excess coverage, if any, to the extent that the other Policy terms, conditions, and exclusions are met.

    ii.        <u>Defenses applicable to the **GLC** Part.</u>

56.

The GLC Part has the following coverage parts: Coverage A (Bodily Injury and Property Damage Liability) and Coverage B (Personal Injury and Advertising Injury Liability), and Coverage C (Medical Payments). There are a number of terms that make clear that the Newman Lawsuit is not covered under the Policy.

57.

*First*, Ms. Battle is <u>not</u> an "**insured**" as such term is defined by the Policy. The **GLC** Part defines "**insured**," in pertinent part, to include: "**employees**, other than executive officers, but only for acts within the scope of their employment by the **policyholder** or a **covered subsidiary**." [**GLC** Part, Sec. II, No. 6]. The term "**policyholder**" is defined as Generations. [Policy, Cover page, p. 1]. There is no "**covered subsidiary**" under the Policy. [Policy, Coverage Summary, p. 2]. Accordingly, whether or not Ms. Battle is an insured depends upon whether or not she was an "**employee**" of Generations as such term is defined by the Policy.

58.

The Policy defines "**employee**" to mean "a person on the regular payroll of the **policyholder**…who has federal income taxes withheld from his or her compensation and who has an assigned work schedule." [Policy, Definitions, p. 2]. It is clear that Ms. Battle does not meet this definition. The Battle Agreement expressly states that Ms. Battle is <u>not</u> an "employee" of Generations and will <u>not</u> have any taxes withheld. [Battle Agreement, Sec. II, para. C.]. Therefore, Ms. Battle is not an "**insured**" under the Policy and, thus, is not entitled to coverage.

59.

*Second*, Exclusion (i) states as follows: "The insurance provided by COVERAGE A does not apply to:…**bodily injury** or **property damage** due to the rendering of or failure to render **professional health care services**." [CGL Part, Section I, No. 2. Exclusion (i)]. To the extent that Generations, Battle, or Brown were providing professional health care services to Ms. Newman, the Policy provides no coverage under the **GLC** Part.

60.

*Third*, as to Coverage B, there is no coverage because the Newman Lawsuit does not meet the Policy definition of "**personal injury**." Coverage B states, in pertinent part, "Subject to the applicable limit of liability, **we** will pay those sums (in excess of any applicable deductible) that an **insured** becomes legally obligated to pay as damages because of **personal injury**…." [Policy, GLC Part, Coverage B, Sec. 1, Para. a.]. The Policy defines "**personal injury**," in pertinent part, as follows: "**Personal injury** means injury, other than **bodily injury**…." [Policy, Definitions, p. 3]. "**Bodily injury**" means "physical bodily injury…." [Policy, Definitions, p. 1]. Because the Newman Lawsuit concerns alleged bodily injuries to Ms. Newman, there is no coverage under Coverage B of the **GLC** Part.

iii.   Defenses applicable to the **PLC** Part.

61.

The PLC Part generally provides the following coverage, subject to the applicable terms, conditions and exclusions:

> **we** will pay on behalf of each **insured** all sums (in excess of any applicable deductible) which the **insured** shall become legally obligated to pay as damages because of any **professional incident**…This insurance applies to **professional incidents** arising out of **professional services** rendered anywhere in the world….

[Policy, PLC Part, Sec. I]. Accordingly, for there to be coverage under the **PLC** Part, the terms "**insured**," "**professional incident**," and "**professional services**" must be met, along with the other applicable terms, conditions, and exclusions.

62.

*First*, Ms. Battle is not an "**insured**" as such term is defined by the Policy. The **PLC** Part defines "**insured**," in pertinent part, to include: "**employees**, other than executive officers, but only for acts within the scope of their employment by the **policyholder** or a **covered subsidiary**." [**PLC** Part, Sec. VI, No. 6]. The term "**policyholder**" is defined as Generations. [Policy, Cover page, p. 1]. There is no "**covered subsidiary**" under the Policy. [Policy, Coverage Summary, p. 2]. Accordingly, whether or not Ms. Battle is an insured depends upon whether or not she was an "**employee**" of Generations as such term is defined by the Policy.

63.

The Policy defines "**employee**" to mean "a person on the regular payroll of the **policyholder**…who has federal income taxes withheld from his or her compensation and who has an assigned work schedule." [Policy, Definitions, p. 2]. It is clear that Ms. Battle does not meet this definition. The Battle Agreement expressly states that Ms. Battle is not an "employee" of Generations and will not have any taxes withheld. [Battle Agreement, Sec. II, para. C.]. Therefore, Ms. Battle is not an "**insured**" under the Policy and, thus, is not entitled to coverage.

64.

*Second*, there is no coverage under the **PLC** Part for the Newman Lawsuit because the terms "**professional incident**" and "**professional services**" are not met. Under the Policy, the term "**professional incident** means any negligent act, error or omission in the furnishing of **professional services** by an **insured**…." [Policy, Definitions, p. 3]. The term "**professional**

**services** means services rendered by an **insured**…within the scope of the profession or business of the **policyholder** shown on the **Coverage Summary**." [Policy, Definitions, p. 3]. The Coverage Summary defines the Generations profession or business as follows: "Adult Day Care / Foster Care Placement." [Policy, Coverage Summary, p. 1]. There is no mention of "Residential Services" because such services were not disclosed on the Application. Accordingly, because the Newman Lawsuit concerns residential care, the terms "**professional incident**" and "**professional services**" are not met and, thus, there is no coverage under the **PLC** Part.

65.

*Third*, Exclusion (O) states as follows: "**We** will not pay damages because of any of the following, and **we** will not provide a defense for any suit alleging any of the following:… **Bodily injury** or **property damage** arising out of an **occurrence** for which an **insured** is afforded coverage under the General Liability Coverage Part of this **policy**…." [Policy, PLC Part, Sec. III, Exclusion O]. Accordingly, to the extent that it is determined that there is coverage for the Newman Lawsuit under the **GLC** Part (though ProAssurance contends there is none), then there is no coverage under the **PLC** Part.

**COUNT ONE: RESCISSION**

66.

Plaintiff incorporates the preceding paragraphs 1 through 65 of the Complaint as if fully stated herein verbatim.

67.

Pursuant to O.C.G.A. § 33-24-7, Generations' material misrepresentations on its Application for the Policy entitle ProAssurance as a matter of law to rescind the Policy. Thus, the Policy is void *ab initio* based on the material misrepresentation in the Application.

## COUNT TWO: DECLARATORY JUDGMENT

68.

Plaintiff incorporates the preceding paragraphs 1 through 67 of the Complaint as if restated fully here verbatim.

69.

ProAssurance is in a position of uncertainty or insecurity with respect to its rights, status, and other legal relations as to the Policy at issue. There is a genuine case and controversy between ProAssurance and Defendants. ProAssurance shows that the claims made under the Policy are excluded from coverage and/or that it is entitled to rescind the Policy. In the absence of a declaratory judgment, ProAssurance will be forced either to pay for claims and to defend claims for which it may not be liable, or in the alternative, to deny coverage or a defense and risk additional liability.

70.

In order to resolve the uncertainty surrounding these and other claims, ProAssurance demands and is legally entitled to a declaratory judgment.

71.

ProAssurance is entitled to a declaratory judgment that there is no coverage under the Policy for the Newman Lawsuit.

WHEREFORE, Plaintiff prays for the following relief:

(1)     That the Court enter an Order rescinding the Policy *ab initio*;

(2)     That the Court enter a Declaratory Judgment that the claims asserted in the Newman Lawsuit are excluded from coverage under the terms and conditions of the Policy and ProAssurance is relieved of its obligations under the Policy as to those claims;

(3)　That all costs be charged to the Defendants; and,

(4)　that Plaintiff have such other and further relief as the Court deems just and proper.

This, 10th day of MARCH, 2021

CARR & WEATHERBY, LLP

/s/Pitts Carr
W. Pitts Carr
Georgia Bar No. 112100
pcarr@wpcarr.com

/s/Alex Weatherby
Alex D. Weatherby
Georgia Bar No. 819975
aweatherby@wpcarr.com

4200 Northside Parkway, NW
Building 10
Atlanta, Georgia 30327
(404) 442-9000
(404) 442-9700 (fax)
www.wpcarr.com